UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| BETHZAIDA M. COLÓN, PEDRO M. RODRÍGUEZ-EMA, and their conjugal partnership,<br><br>Plaintiffs,<br><br>v.<br><br>RESTAURANT OPERATORS INC., et al.<br><br>Defendants. | Civil No. 08-1998 (JAF) |

**OPINION AND ORDER**

Plaintiffs, Bethzaida M. Colón, Pedro M. Rodríguez-Ema, and their conjugal partnership, bring this action against Defendants, Restaurant Operators, Inc., d/b/a Longhorn Steakhouse Operators, Inc. ("Longhorn"), and unnamed insurance companies, alleging sexual harassment through the creation of a hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. (Docket No. 10.) Plaintiffs also bring supplemental claims under various Puerto Rico antidiscrimination and wrongful discharge statutes. (Id.)  Longhorn moves for summary judgment (Docket Nos. 30–33), and Plaintiffs oppose (Docket No. 39; 42). Longhorn replies to Plaintiffs' opposition and statement of additional facts. (Docket Nos. 48; 49.) Plaintiffs surreply. (Docket No. 63.)

Civil No. 08-1998 (JAF)                                                                                                    -2-

# I.

## Factual and Procedural History

We derive the following facts from the parties' motions, statements of uncontested material facts, and exhibits. (Docket Nos. 30–33; 39; 41; 42; 48; 49.)

In January 2006, Colón began working as a server at the Longhorn Steakhouse in Plaza Escorial, Carolina, Puerto Rico. As part of their duties, Longhorn servers were expected to perform various "sideworks" on a rotating basis. These sideworks included: emptying garbage cans, fetching ice, restocking mugs and glasses, and refilling the "Expo" area. When a server is assigned to the Expo area for sidework, they are expected to carry stacks of plates and move garbage cans, among other tasks. In June 2007, Colón presented manager Benigno Collazo with a doctor's note stating that she suffered from arthritis and should not, at that time, be made to "carry, push, pull or lift more than 15 pounds." (Docket No. 33-4.) Plaintiffs contend that Collazo recorded in a notebook that Colón was not to be assigned to the Expo area, as it involved lifting heavy stacks of plates and garbage cans. Collazo denies this, maintaining that he never specified what tasks Colón would be barred from, only that the management would ensure she did not have to lift more than fifteen pounds. Regardless, both sides agree that after the conversation with Collazo, Colón was not assigned to the Expo sidework for some time.

When Colón first began working at Longhorn, she was trained as a server by Lambert David. Colón and David began to socialize outside of work more frequently beginning in June 2007. Lambert had previously been in a lengthy relationship with Marilyn Alvarado, a fellow server at Longhorn. In the early hours of July 19, 2007, Colón was at David's residence when

Civil No. 08-1998 (JAF)                                                                                                -3-

Alvarado appeared. An argument erupted between Alvarado and Colón. While Alvarado and Lambert both contend that the argument never moved beyond a verbal altercation, Plaintiffs claim that Alvarado hit Colón, causing her to fall down some stairs and land against a garbage can. Later that day, Colón informed manager Luis Hernández that she had been beaten up by Alvarado and asked for his protection at work.

Plaintiffs claim that on the following day, July 20, 2007, Alvarado threatened Colón with a breadboard, warning her not to talk to David again, mentioning that her father was a police lieutenant, and promising "you're gonna get it."[1] Colón told another manager, Héctor Falcón, about these threats and the alleged July 19 battery and asked for his protection from Alvarado. Plaintiffs claim that Falcón, in response, threatened to transfer Colón to another store if she continued to complain about Alvarado. Falcón states, however, that he made no such threat and that he promptly forwarded Colón's complaint to human resources for investigation.

Plaintiffs allege further harassment by Alvarado over the next two months, including frequent threats like "[l]eave my husband alone, you don't know what I'm capable of"; increased oversight of Colón's work; recommendations that management fire Colón; intimidating stares; threatening phone calls to Colón's home; an attempt by Alvarado to hit Colón with her car; and an incident in which Alvarado followed Colón's car home after seeing Colón at a bar with David.[2] (See Docket Nos. 41-1 at 35–37, 57, 58, 59.)

---

[1] In the original Spanish this quote is "te vas a joder," a considerably stronger phrase than the sanitized translation provided by Plaintiffs.

[2] In addition, Plaintiffs claim that Alvarado told coworkers that Colón was a "whore." (See Docket No. 58-1 at 14.) Plaintiffs fail to establish Colon's basis of personal knowledge for these remarks and, therefore,

Civil No. 08-1998 (JAF)                                                                                          -4-

Colón filed a discrimination complaint with Puerto Rico's Antidiscrimination Unit ("ADU") on September 11, 2007. (Docket No. 33-18.) She withdrew the complaint a week later, stating that she had "no problems working on the same shift as [Alvarado]." (Docket No. 33-19.) On October 11, Colón submitted a letter to Longhorn's human resources manager, explaining Colon's inability to officially withdraw the complaint until a Longhorn lawyer appeared with her before the ADU. (Docket No. 33-20.) Plaintiffs now claim that Colón was pressured by David to withdraw her complaint, for fear of its effect on his and Alvarado's careers. At the end of October, Longhorn completed its internal investigation, begun when Colón filed her complaint before the ADU. As a result, David and Alvarado were transferred to different restaurant locations, while Colón remained at the Plaza Escorial location. Plaintiffs allege that when Colón was presented with the results of the investigation, a Longhorn official, Pedro Morales, told her she was a "deplorable" person whose complaint had damaged the careers of David and Alvarado. (Docket No. 58-1 at 88–89.)

Plaintiffs also claim that, in the wake of her discrimination complaint, Colón's reasonable accommodation was removed, in that she was made to perform the Expo sideworks; her hours were cut; she was assigned schedules outside of her availability; and she was assigned the least desirable tables. (See Docket No. 41-1 at 38–40.) On November 15, 2007, Colón did not show up for her scheduled shift. On the following day, she received a disciplinary warning

---

we may not take them into consideration. See Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge . . . .").

Civil No. 08-1998 (JAF)                                                                                              -5-

from Falcón. That night, she was admitted to the hospital. Puerto Rico's State Insurance Fund placed Colón on medical leave from November 27, 2007 through May 13, 2008.

When Colón returned to work at Longhorn in May 2008, she was reinstated as a hostess—a position with reduced hourly pay and responsibilities. Longhorn maintains that this was a result of a new medical evaluation limiting her to lifting no more than ten pounds. Plaintiffs and Longhorn disagree over whether this ten-pound limitation prevented Colón from performing the essential duties of a server. Plaintiffs further state that, as a hostess, Colón was segregated from other employees and stripped of various duties that had been assigned to other hostesses. (Docket No. 41-1 at 41–42.) Longhorn asserts that any difference seen in Colón's hosting duties was a result of her doctor's proscribing any activity in which she lifted over ten pounds. (Docket No. 49 at 18–21.)

Colón resigned from her position with Longhorn on September 3, 2008. Plaintiffs filed this action the following day, claiming violations of Title VII; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; and Puerto Rico's antidiscrimination laws. (Docket No. 2.) Plaintiffs amended their complaint (Docket No. 10) and later moved to voluntarily dismiss their ADA claims (Docket No. 22).

## II.

### Summary Judgment Under Rule 56(c)

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual

Civil No. 08-1998 (JAF)                                                                                                           -6-

dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In evaluating a motion for summary judgment, we must view the record in the light most favorable to the nonmovant, and we must consider the entire record of admissible evidence. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000). "Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted). The nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III.

## Analysis

**A.     Title VII Claims**

Plaintiffs allege that Colón was a victim of both hostile work environment sexual discrimination and retaliation, in violation of Title VII. For the reasons stated below, we find that genuine issues of material fact exist as to both claims.

### 1. **Hostile Work Environment**

Title VII makes it unlawful for employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This prohibition covers discrete acts of employment discrimination, such as termination or refusal to hire, but its reach is not limited to "'economic' or 'tangible' discrimination." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002). Even in the absence of an adverse employment decision, § 2000e-2(a)(1) prohibits employers from requiring employees "to work in a discriminatorily hostile or abusive environment." Id.; see also Torres-Negrón v. Merck & Co., 488 F.3d 34, 39–40 (1st Cir. 2007).

A claim of hostile work environment under Title VII exists where a "workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). To prevail in a claim of hostile work environment sexual harassment, a plaintiff must demonstrate:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Civil No. 08-1998 (JAF)                                                                                                          -8-

Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 (1st Cir. 2010) (quoting Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)).

Longhorn seeks summary judgment on the "basis for employer liability" and "sufficiently severe or pervasive" elements of Plaintiffs' hostile work environment sexual-harassment claim. (Docket No. 30 at 19–20.)

### a.     Employer Liability

Plaintiffs advance two bases of employer liability for Alvarado's harassment of Colón: that Alvarado acted as Colón's supervisor or, in the alternative, that Alvarado acted as Colón's coworker. (Docket No. 10.) Longhorn responds with a two-prong argument against liability. First, it argues that Alvarado was not a supervisor but a coworker. Second, Longhorn maintains that it took prompt and appropriate steps to remedy the alleged harassment and, therefore, cannot be held liable under a theory of coworker liability. (Docket Nos. 30 at 19; 48 at 5.)

An employer may be liable for sexual harassment regardless of whether the harasser is a supervisor or coworker, but a plaintiff's burden of proof differs depending on which the harasser is. See Crowley, 303 F.3d at 401. Thus, we begin our analysis by asking whether Alvarado was Colón's supervisor or coworker. To determine whether an employee is a supervisor within the meaning of Title VII, we look to that employee's ability to "hire, fire, demote, promote, transfer or discipline an employee." Noviello v. City of Bos., 398 F.3d 76, 96 (1st Cir. 2005) (quoting Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1033 (7th Cir. 1998)). "Without some modicum of this authority, a harasser cannot qualify as a supervisor

Civil No. 08-1998 (JAF) -9-

for purposes of imputing vicarious liability to the employer in a Title VII case, but, rather, should be regarded as an ordinary coworker." Id.

In this case, Longhorn has presented the deposition testimony of various witnesses supporting the proposition that Alvarado never had such supervisory authority over Colón. (Docket No. 31 at 3–4.) Plaintiffs, however, have not countered this argument with evidence demonstrating Alvarado had supervisory authority over Colón. Rather, Plaintiffs argue that Alvarado's "Key Employee" position carried with it the "authority to admonish [employees] and to recommend to the manager the issuance of warnings to them." (Docket No. 41-1 at 2.) There is no evidence on the record that an "admonishment" from a Key Employee carried any adverse consequences. Therefore, we find that Alvarado was not a supervisor under the Title VII regime.

To establish employer liability for a hostile work environment created by coworkers, a plaintiff must prove that the employer both "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." Forrest, 511 F.3d at 230 (quoting Crowley, 303 F.3d at 401).

We find that a genuine issue of material fact exists as to whether Longhorn acted promptly and appropriately to correct the hostile work environment created by Alvarado. Longhorn has asserted that it took reasonable steps to investigate Colón's harassment claim and to prevent any further harassment. (Docket Nos. 30 at 22; 31 at 16–17; 48.) The First Circuit has not articulated a standard by which to determine whether an employer's action was prompt and appropriate. See, e.g., Wilson v. Moulison N. Corp., 691 F. Supp. 2d 232, 237 (D. Me.

2010) (noting the absence of a standard). Because such determinations are case specific and fact intensive, the First Circuit has stated that they are best left to juries. Forrest, 511 F.3d at 232. In Forrest, however, the court affirmed summary judgment for the employer on the basis of its "prompt and appropriate" response to harassment. Id. The court noted that the employer had implemented a policy against sexual harassment and trained managers to discipline harassers; that, following the victim's complaints, successive disciplinary actions were taken against the harasser throughout the four to six-week period of harassment; and that the harasser was fired within a month of receiving his first warning. Id. at 231–32.[3] The Tenth Circuit has taken a similar approach. See, e.g., Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998) ("[Appropriate responses] have often included prompt investigation of the allegations, proactive solicitation of complaints, scheduling changes and transfers, oral or written warnings . . ., reprimands, and warnings that future misconduct could result in progressive discipline . . . .").

Plaintiffs show that Colón reported instances of harassment to supervisors on July 19 and 20, 2007. (Docket No. 41-1 at 37.) Given that Longhorn's investigation, which culminated in the transfer of Alvarado, was not completed until the end of October 2007 and that no other

---

[3] In dicta, the court rejected the Sixth Circuit's approach, wherein an employer response is appropriate unless it "exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." Forrest, 511 F.3d at 231 n.8 (quoting McCombs v. Meijer, 395 F.3d 346, 353 (6th Cir. 2005)). The Court noted that this standard was a heavier burden for plaintiffs than that usually seen in First Circuit opinions. Id. ("A reasonable jury could find that an employer response was not prompt and appropriate without being so indifferent as to indicate an attitude of permissiveness amounting to discrimination.")

Civil No. 08-1998 (JAF)                                                                                                                    -11-

action had been taken to remedy the harassment, a reasonable jury could find that Longhorn's action was not prompt.

### b. Sufficiently Severe or Pervasive Harassment

Longhorn has broadly alleged that the instances of harassment cited by Plaintiffs were neither severe nor pervasive and, thus, did not create a hostile work environment in violation of Title VII. (See Docket No. 30 at 22.)

The First Circuit has recognized that whether harassment is "sufficiently severe or pervasive" to alter the work environment is a question not easily resolved. See Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) ("There is no mathematically precise test to determine whether [a plaintiff] presented sufficient evidence . . . ." (quoting Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003))). Courts must engage in a broad inquiry incorporating all relevant factors, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Id. Given the fact-specific nature of this inquiry, it is a determination normally left to the trier of fact, and summary judgment on this issue should be granted only to "polic[e] the baseline for hostile environment claims." See id. (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999)). In Pomales, the First Circuit affirmed summary judgment on one such baseline claim where there was a single incident of verbal harassment without proof that it negatively impacted the victim's ability to perform her job. Id. at 83–84.

Civil No. 08-1998 (JAF) -12-

In light of the evidence presented by Plaintiffs, which includes claims of battery, assault, and physical intimidation, a reasonable jury could find that the alleged harassment was severe.

**2. Retaliation**

Plaintiffs claim that, following Colón's sexual-harassment complaint, Longhorn took steps to retaliate against her by creating a work environment so hostile that she had no choice but to resign. (Docket No. 38 at 23–26.)

Title VII makes it unlawful for employers to retaliate against employees who seek Title VII's protections. See 42 U.S.C. § 2000e-3(a). A prima-facie case of retaliation under Title VII must establish: (1) plaintiff's protected participation or opposition; (2) a materially adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination;" and (3) the adverse action taken was causally linked to the plaintiff's protected activity. Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007). The causal link can be demonstrated, without further evidence, by the temporal proximity of the adverse employment action to the plaintiff's protected participation. See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (holding that occurrence of adverse employment action within one year of protected participation was, by itself, enough to satisfy causal prong of prima-facie case).

Once a plaintiff establishes a prima-facie case of retaliation, the employer must articulate a legitimate, nonretaliatory reason for its actions. See Roman v. Potter, 604 F.3d 34, 39 (1st Cir. 2010). Once the employer meets this burden of production, the plaintiff must show that the

employer's proffered legitimate reason is merely a pretext for retaliatory animus. Id. At the summary judgment stage, a plaintiff is not required to prove pretext by a preponderance of the evidence; she need only raise a genuine issue of material fact as to whether retaliation was the true motivation for the adverse employment action suffered. See Collazo v. Bristol-Myers Squibb Mfg., No. 09-1665, 2010 WL 3037811, at *8 (1st Cir. Aug. 5, 2010) (citing Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)).

Longhorn does not dispute that Colón engaged in protected activity. It argues, however, that Colón did not suffer an adverse employment action and, in the alternative, that there was no causal relation between her protected activity and the adverse actions alleged. (Docket No. 30.)

An employer's creation or toleration of a hostile work environment qualifies as an adverse employment action. See Noviello, 398 F.3d at 88–90. A constructive discharge is also a materially-adverse action and exists where "working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000).

In the present case, a reasonable jury could find that Colón suffered from an adverse employment action. Plaintiffs present evidence that, within three months following her complaints of discrimination, Colón's number of scheduled hours were reduced while other servers' hours remained the same; she was increasingly scheduled for shifts outside her available hours; she was assigned to lower traffic tables; and reasonable accommodations

Civil No. 08-1998 (JAF)                                                                                         -14-

previously granted to her for a shoulder disability were withdrawn. (See Docket No. 41-1 at 38–40). Plaintiffs also show that after she returned to work in May 2008, she was assigned to a lower-paid hostess position, reduced work hours and duties, and was segregated from coworkers. (Docket No. 41-1 at 41–42.) Longhorn's only challenge to these facts is to argue that Colón's reasonable accommodation was never revoked. Given the conflicting testimony of Colón and the management on the issue, it is a question best left for the jury.

As to Longhorn's challenge of the causal connection, Longhorn asserts that legitimate business reasons justify the changes in Colón's working conditions. (See Docket No. 49 at 13–17.) Longhorn states that Colón's schedule was changed as part of a seasonal dip in business lasting from August to November each year and that Colón's responsibilities differed only because she could no longer perform the duties of a server. (Id.) In light of the evidence of these detrimental changes to Colon's working conditions, and of how closely they followed her discrimination complaint, a reasonable jury could find that Longhorn's proffered legitimate reasons were a pretext for discriminatory retaliation. See Mariani-Colón, 511 F.3d at 223.

### B.  Supplemental Claims

Longhorn has not challenged the merits of Plaintiffs' supplemental claims, relying instead on our discretion to dismiss supplemental claims where all federal claims conferring original jurisdiction have been dismissed. As we do not dismiss all Plaintiffs' federal claims, we have no basis to dismiss their supplemental claims.

**IV.**

**Conclusion**

For the reasons stated above, we hereby **GRANT IN PART** and **DENY IN PART** Longhorn's motion for summary judgment (Docket No. 30). We **DISMISS** Plaintiffs' sexual-harassment claims based upon a theory of harassment by a supervisor. Plaintiffs' coworker harassment, retaliation, and supplemental claims survive summary judgment and will be scheduled for trial.

The Pretrial Conference scheduled for **September 13, 2010, remains as set**. The parties are urged to consider all settlement possibilities and, to that end, a final settlement conference shall be held on **October 4, 2010, at 1:30 P.M.** Trial shall be held on **October 12, 2010, at 9:00 A.M.** A Final Proposed Pretrial Order shall be filed by **October 8, 2010.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 10th day of September, 2010.

                                      s/José Antonio Fusté
                                      JOSE ANTONIO FUSTE
                                      Chief U.S. District Judge